Young, J.,
with whom Leavitt, J., joins, dissenting:
I respectfully dissent because I disagree with the majority’s conclusion that Hollaway’s sentence was imposed under the influence of prejudicial and arbitrary factors.
While review of this case is required by statute, under the facts and circumstances of the instant appeal, I feel that more consideration should have been given to Hollaway’s competency and desire to represent himself in the manner in which he saw fit. Hollaway was initially examined by a psychiatrist who recommended further evaluation and a psychologist who concluded that he was competent to stand trial. Hollaway was subsequently committed to Lakes Crossing Center, a decision which the district court later characterized as a “very, very close question in the first place.” Several months after commitment, the district court reviewed the reports of a sanity commission, comprised of two psychiatrists and one psychologist, concluding that Hollaway was competent to stand trial. The district court agreed with this determination and found Hollaway competent to stand trial. The district court also concluded that Hollaway had the right to represent himself. Hollaway has not expressed dissatisfaction with the guilt or penalty phases of his trial and has not pursued this appeal. Therefore, I feel that remanding for a new penalty hearing is unwarranted.
The majority concludes that the imposition of Hollaway’s sentence was improperly influenced in three ways. First, the majority cites the incident in which Hollaway’s electronic stun belt was accidentally set off. The district court immediately excused the jury and ascertained that the belt had merely malfunctioned. After calling the jury back into the courtroom, the district court informed the jury that
[t]he corrections officers often ask with people who are charged with murder to use the latest technology. Mr. Hollaway is wearing a belt, an electric belt. It’s only supposed to be used if the defendant causes some problem. Mr. Hollaway, not today, nor at any other day in this [c]ourt, nor as far as I know in the jail, has caused any trouble at all. But he does have the belt on, and the court services officer in leaning over, he has the control in his pocket, just zapped Mr. Hollaway accidentally. That causes him to get quite a shock, an electric shock, and as I said, he did absolutely nothing to cause it. It was a pure accident. Every once in a while there are people that cause disruptions in court. Mr. Hollaway hasn’t at any time done that.
*750 The majority appears very focused on the fact that Hollaway did nothing to provoke the activation of the stun belt. However, it is clear from the above quotation that this fact was made abundantly clear to the jury by the district court. I conclude that it is unnecessary to remand this case for an entirely new sentencing phase based on an accident that was immediately explained to the jury and appropriately handled by the district court.
Second, the majority finds that the “holiday arguments” made by the prosecutor to the jury in closing arguments during the penalty phase were improper. In support of this finding, the majority cites Quillen v. State, 112 Nev. 1369, 929 P.2d 893 (1996). The prosecutor in Quillen “referred to Thanksgiving no fewer than eight times, stating on two occasions that [the victims] were having their ‘Thanksgiving meal’” when they were attacked. Quillen, 112 Nev. at 1381, 929 P.2d at 901. In the instant case, the prosecutor only once stated to the jury that Whiting’s family would have no more holidays with their daughter and their sister. I conclude that while improper, the prosecutor’s comments clearly do not rise to the level of egregious conduct with which this court was concerned in Quillen.
Finally, the majority concludes that under the circumstances of this case, the jury required further instruction regarding its responsibilities in assessing the evidence during the penalty phase.
The majority first concludes that the jury was not instructed in the penalty phase that the statements, arguments, or opinions of counsel or a party were not evidence in the case and that their deliberations were to be governed by the evidence as understood and remembered and by the law as given it by the court. However, the record reveals that the jury did receive such instruction during the guilt phase. Further, this court has never held that it is mandatory that such an instruction be given during the penalty phase and does not appear to do so now.
Next, the majority also concludes that under Penry v. Lynaugh, 492 U.S. 302 (1989), to ensure that jurors have reliably determined death to be the appropriate punishment for a defendant, ‘ ‘the jury must be able to consider and give effect to any mitigating evidence relevant to a defendant’s background and character or the circumstances of the crime.” Id. at 328. However, the defendant in Penry, unlike Hollaway, offered mitigating evidence of his mental retardation and abused childhood in support of a sentence of life imprisonment as opposed to death. Id. at 320. The Court was concerned that the jury would be unable to give effect to that mitigating evidence under the instructions given in the case. Id. at 326. However, this is not the issue in the present case because Hollaway did not present any mitigating evidence. Therefore, I conclude that Penry is inapplicable to the instant case.
*751 Here, the majority is imposing an additional burden upon the jury in considering whether mitigating circumstances exist by instructing the jury to make an independent and objective analysis of all the relevant evidence. I find this type of instruction unnecessary because the Nevada legislature has already spoken on this issue. NRS 175.554 provides in pertinent part:
1. If the penalty hearing is conducted before a jury, the court shall instruct the jury at the end of the hearing, and shall include in its instructions the aggravating circumstances alleged by the prosecution .... The court shall also instruct the jury as to the mitigating circumstances alleged by the defense upon which evidence has been presented during the trial or at the hearing.
If the legislature intended for the jury to conduct an independent review of all the evidence presented during both the guilt and penalty phases in a search for mitigating evidence, the legislature would have included such an instruction in this statute. Instead, the statute very clearly states that the court shall instruct the jury as to the mitigating circumstances alleged by the defense. In this case, there is no mitigating evidence to be considered because Hollaway chose not to present any. The majority goes beyond the intention of the legislature and places an additional and unnecessary burden upon our juries in cases in which the death penalty is sought.
Finally, Hollaway has made it clear that he wanted no defense presented at trial, nor did he want mitigating evidence presented during the penalty phase. In fact, Hollaway himself was not interested in actively pursuing this appeal. This being the case, it would appear that remanding to the district court for a second penalty phase is a useless, expensive, and time-consuming undertaking.
The new instruction imposed by the majority requires the jury to review the evidence presented during both the guilt and penalty phases. However, the jury impaneled on remand will presumably be a new jury that did not sit for the extensive presentation of evidence that occurred during the guilt phase. Additionally, the State will most likely introduce only the most damning and inculpatory evidence against Hollaway upon remand at the second penalty hearing. Finally, there is no indication that Hollaway has experienced a change of heart and now wishes to present mitigating evidence. Therefore, I believe that remanding this case for a new penalty hearing will be a costly exercise in futility and may give rise to additional appeals. Therefore, I would affirm Hollaway’s sentence.
For the foregoing reasons, I dissent.